[Crim. No. 4678. First Dist., Div. One. June 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD ARTHUR STURDY, Defendant and Appellant.

William B. Burleigh, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—Defendant appeals from the judgment of conviction finding him guilty of having violated Penal Code section 4530, subdivision (b),[1] escape from a state prison without force. Defendant's sole contention on this appeal is that he was twice placed in jeopardy for this crime. In addition to discussing this issue, we will also consider the applicability of the recent California Supreme Court decision in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], to the instant case. We set forth the relevant facts under the appropriate discussion.

### *Double Jeopardy*

Defendant, an inmate of the Correctional Training Facility located at Soledad in Monterey County, left the facility without authorization on December 1, 1963. Subsequently, he was apprehended in Los Angeles County, returned to Monterey County, and on March 13, 1964, an information charging him with a violation of section 4530, subdivision (b), was filed. On March 17, 1964, defendant appeared for arraignment before the Superior Court of the County of Monterey. The transcript of that proceeding discloses the following chain of events: Defendant was asked his name by the trial court; he was informed that the district attorney had filed an information charging him with escape from a state prison; the process of arraignment was explained to him;[2] he was informed of

---

[1]Unless otherwise indicated all statutory references are to the Penal Code.

[2]Specifically, the court stated: ''You are about to be arraigned on this charge. An arraignment consists of reading the Information to you, handing you a copy of it, asking your true name and asking you for your plea.''

his right to an attorney and his various other rights with regard to trial. Defendant indicated that he did not wish to be represented by counsel and asked the court if there would be "a possibility of having this all taken care of today?" The court then asked defendant several questions concerning the charge against him, the prosecutor interposed some remarks, and finally the court stated to defendant that "If you want to have the case disposed of now, the Court can dispose of it now. . . . What do you wish to do? Do you wish the Court to appoint an attorney, or do you wish to be sentenced now, or what?", in response to which defendant replied: "I'd like to be sentenced now. I am guilty of the charge. I don't see any other way of possibility of any help or anything of that nature." The court then asked defendant if he had any legal reason why judgment should not be pronounced at that time, defendant answered "No," and the court pronounced its judgment, ordering defendant imprisoned for the term prescribed by law.

At the conclusion of these proceedings defendant left the courtroom under custody of the sheriff. At a later hour,[3] defendant was returned to the courtroom and the trial court proceeded to arraign him. A copy of the information was handed to defendant at this time and was also read aloud by the clerk. Defendant entered a plea of not guilty and at his request counsel was appointed to represent him. The court then cancelled the prior proceeding and set the matter for trial. The minutes of the court state that defendant was returned to the court for arraignment "it appearing that arraignment proceedings were inadvertently omitted." In the transcript of this proceeding the trial court indicated that in the prior proceeding it "did neglect to read the Information to him" before pronouncing sentence, and also made the statement that "The defendant was brought back into the courtroom after having pleaded guilty and sentenced. . . ." The minutes of the court are silent, however, as to whether a plea was taken or entered in the prior proceeding.[4]

On April 9, 1964, defendant moved to enter two additional pleas. The motion was granted and defendant then entered the plea of a former judgment of conviction of the offense charged and that he had been placed once in jeopardy.

---

[3]Defendant testified that a period of five minutes elapsed between the time he was taken from the courtroom and his return thereto.

[4]The two proceedings shall hereinafter be referred to as the first and second proceeding, respectively.

Defendant waived a jury trial, and when the matter came before the court for trial, defendant was found "not in jeopardy" and guilty as charged. The court then sentenced defendant and returned him to the custody of the sheriff.

Based on this chain of events, defendant urged at the trial and continues to urge on appeal that the first proceeding, which was subsequently vacated, resulted in a voidable conviction, and that, as such, it effectively put him in jeopardy, so as to allow him in the instant action to raise the defense of double jeopardy. The People, in reply, urge that since there had been no arraignment and no plea in the first proceeding the court acted without jurisdiction in imposing the sentence. The thrust of the People's argument is that there being no plea there was no basis for a valid judgment.

Before proceeding to a discussion of the respective contentions we should consider the nature of an arraignment upon a criminal charge. Pursuant to section 988 an arraignment consists of three acts: (1) Reading the accusatory pleading to the defendant; (2) delivering to him a true copy thereof; and (3) asking him whether he pleads guilty or not guilty to the accusatory pleading. In the instant case the minutes of the court with respect to the first proceeding are silent as to whether any of these acts were performed. However, that the accusatory pleading was not read to defendant nor was a copy thereof delivered to him is apparent from the reporter's transcript of the first proceeding and from the statements of the court at the second proceeding.

With respect to the making and entry of pleas, section 1017 specifically provides, in pertinent part, as follows: "Every plea must be made in open court and may be oral or in writing, and *must be entered upon the minutes of the court and must be taken down in shorthand by the official reporter if there is one present.* The plea . . . must be in substantially the following form: 1. If the defendant plead guilty: 'The defendant pleads that he is guilty of the offense charged.'" (Italics added.) It has been held that this section expressly requires that a plea of a defendant must be recorded in the minutes of the court. (*People* v. *Russell*, 156 Cal. 450, 458 [105 P. 416]; *People* v. *Rogers*, 112 Cal.App. 615, 619 [297 P. 924]; *People* v. *Gaines*, 52 Cal. 479, 480.) In discussing this requirement, the Supreme Court in *Gaines* stated as follows: "In the absence of any showing to the contrary, it must be presumed that the minutes of the Clerk were correctly kept; but if they were not, they could only be corrected, if at

all, by some appropriate proceeding in the Court below. On appeal, we must consider the minutes as we find them in the transcript, and cannot indulge the presumption that proceedings occurred at the trial which ought to have been, but were not, entered in the minutes. In order to ascertain whether the defendant was arraigned and pleaded to the indictment, we can look only to the record before us; . . ." (P. 480.)

As noted, the record before us also includes a transcript of the proceedings at the first hearing taken down by the official reporter. This transcript likewise discloses that a plea was not taken as required by sections 988 and 1017. Although the transcript reveals that defendant stated "I'd like to be sentenced now. I am guilty of the charge," this statement was made not in response to the trial court's asking him whether he was pleading guilty or not guilty, but rather in response to the court's question as to whether defendant wanted the court to appoint an attorney or whether he wanted to be sentenced at that time. A defendant's expression of guilt, in order to constitute a plea of guilty, must be made in response to a question by the court as to how the defendant pleads and must be couched in language indicating that the defendant is formally making a plea rather than merely making an informal and spontaneous statement as to his guilt. (§§ 988 and 1017; see *People* v. *Miller,* 137 Cal. 642, 645 [70 P. 735].) In *People* v. *McCrory,* 41 Cal. 458, 461, it was stated, "A plea confessing himself to be guilty of crime should not be entered except with the express consent of the defendant, given by him personally, in direct terms, in open Court. Nothing should be left to implication. . . ."

We conclude, therefore, that defendant's statement that he was guilty did not constitute a plea within the meaning of sections 988 and 1017. We are satisfied, moreover, that were the situation reversed, the People would not be in a position to claim that a valid plea of guilty had been entered in the proceedings here under scrutiny. In reaching this conclusion we are not unmindful of the decision of this court in *People* v. *Niendorf,* 197 Cal.App.2d 594 [17 Cal.Rptr. 467], wherein it was held that although the defendant did not use the words " 'I plead guilty,' " the circumstances were such as to show that he had made an effective plea of guilty. The conclusion there reached that the plea was in response to the court was based on the defendant's affirmative answers to the court's questions as to whether it was his desire to change his plea from not guilty to guilty and " 'you understand the

nature of the plea that you have made?' '' (p. 597, italics omitted), coupled with the court's statement that '' 'The record will show that the defendant personally, and in the presence of counsel, has pleaded guilty to the charge of violating Section 288 of the Penal Code' '' (p. 597; italics omitted), and the defendant's negative answer to the question as to whether he had any legal cause to show why judgment should not be pronounced against him when he subsequently appeared for judgment and the court again noted that he had entered a plea of guilty.

▌ It is the general rule in this state that no valid judgment can be rendered in a criminal case where there has been no arraignment or plea. (*People* v. *Corbett*, 28 Cal. 328, 331; *People* v. *Gaines, supra,* p. 481; *People* v. *Monaghan,* 102 Cal. 229, 233 [36 P. 511]; *In re Brain,* 70 Cal.App. 334, 335 [233 P. 390].) In *Corbett* and *Gaines,* where the defendant was not arraigned and did not enter a plea, it was held that the verdict was a nullity and that no valid judgment could be entered thereon. The situation in *Monaghan* was one wherein the defendant, who was duly arraigned but did not enter a plea, was tried and convicted by a jury. The *Brain* case, on the other hand, involves a situation where no plea was taken and where judgment was pronounced upon the theory that the defendant had pleaded ''guilty.''[5] Although the Supreme Court noted in *Corbett* that had the defendant, at any time prior to trial, pleaded not guilty, the defect in arraignment, or the omission to arraign, might have been cured on the ground of waiver, it specifically held in *Monaghan* that the absolute requirement of the law that an accused must plead personally to the indictment on arraignment could not be cured by the fact that he was brought into court and tried without objection. It should be here noted, however, that in *People* v. *Suesser,* 142 Cal. 354, 357 [75 P. 1093], where the defendant was tried after entering a ''not guilty'' plea, it was held that the failure to deliver a copy of the information at arraignment was an irregularity which could be waived by the failure to make a timely objection.[6]

▌ *Corbett, Gaines, Monaghan* and *Suesser* were all decided prior to the adoption of article VI, section 4½, of the California Constitution which provides, in pertinent part, that

[5]The opinion in the *Brain* case does not show whether or not the defendant was properly arraigned.

[6]This principle was applied in the recent case of *People* v. *Mitchell,* 209 Cal.App.2d 312, 319 [26 Cal.Rptr. 89].)

no judgment shall be set aside for any error as to any matter of procedure, unless, after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. Applying this section to a situation where no plea had been taken and where the case was tried on the theory that a "not guilty" plea had been entered, and evidence taken, it was held in *People* v. *Tomsky,* 20 Cal.App. 672, 678-680 [130 P. 184], and in *People* v. *McCalla,* 63 Cal.App. 783, 796-798 [220 P. 436], that the procedural error did not result in a miscarriage of justice. The subject constitutional provision was, however, held by *Brain* to be inapplicable to a situation where there was an omitted plea of guilty. Distinguishing *Tomsky* and *McCalla* on the basis that in those cases the evidence was fully gone into, the rationale of *Brain* is that where the case proceeds on the theory that a guilty plea has been entered and, therefore, no evidence is taken, there is no record upon which the reviewing court may judge the guilt or innocence of the defendant. In the light of the foregoing authorities we conclude, accordingly, that where, as in the first proceeding in the instant case, no arraignment is had or plea taken, and judgment is pronounced on the theory that a guilty plea has been entered, the judgment is a nullity and, therefore, void.

Having determined that defendant did not enter a plea in the first proceeding, and that the judgment therein pronounced upon the theory that defendant had entered a plea of guilty was a nullity and void, we shall now discuss the effect of the proceeding insofar as defendant's plea of double jeopardy is concerned.

The plea of double jeopardy is established in California by the California Constitution and by several statutory provisions as well. Article I, section 13, of the California Constitution provides that "No person shall be twice put in jeopardy for the same offense; . . ." Sections 687 and 1023, respectively, provide as follows: "No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted," and "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included

therein, of which he might have been convicted under that accusatory pleading.'' ▮ The purpose of the double jeopardy defense is to prevent repeated harassment of a defendant on a charge of the same offense, and this purpose is subserved by refusing to permit repeated retrials in order to remedy errors of law made by the court in the course of the trial. (*People* v. *Tideman,* 57 Cal.2d 574, 585 [21 Cal.Rptr. 207, 370 P.2d 1007] ; *People* v. *Valenti,* 49 Cal.2d 199, 209 [316 P.2d 633].)

▮ In order to find that defendant was placed in jeopardy in the first proceeding, we must determine that he was placed on trial before a court of competent jurisdiction and on a valid indictment or information for the same offense for which he was subsequently tried. (*Paulson* v. *Superior Court,* 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641] ; *Mitchell* v. *Superior Court,* 207 Cal.App.2d 643, 648 [24 Cal.Rptr. 671].) In the instant case it is undisputed that the court in which the first proceeding was had was a competent court in the sense that it had jurisdiction over the matter before it ; nor is there any question that the information by which defendant was charged with the crime of escape from prison was a valid information. The remaining question, therefore, is whether the first proceeding placed defendant on trial for the same offense for which he was subsequently tried.

▮ It is fundamental that no plea of double jeopardy can properly be made where the defendant is tried but once. (*People* v. *Tideman, supra,* p. 578 ; *People* v. *Brown,* 49 Cal.2d 577, 592 [320 P.2d 5].) A defendant is tried but once when he is subjected to only one prosecution, i.e. to but one criminal action. (*People* v. *Tideman, supra,* p. 578.) ▮ Accordingly, jeopardy does not attach until a defendant is placed on trial. (*Paulson* v. *Superior Court, supra,* p. 5 ; *Mitchell* v. *Superior Court, supra,* p. 648.) In a jury trial a defendant is ''placed on trial'' when the jury is impaneled and sworn (*Cardenas* v. *Superior Court,* 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889] ; *Mitchell* v. *Superior Court, supra,* p. 649) ; in a court trial when the first witness is sworn. (*People* v. *Ayala,* 138 Cal.App.2d 243, 248 [291 P.2d 517].) Jeopardy also attaches, and a defendant is deemed to have been placed on trial, upon a regular entry of a plea of guilty. (*People* v. *Mims,* 136 Cal.App.2d 828, 830-831 [289 P.2d 539] ; *People* v. *Ayala, supra,* p. 248.) ▮ In the present case the record discloses that the proceeding under scrutiny proceeded as a nonjury case based upon a purported plea of guilty. As

already pointed out no such plea, or for that matter no plea of any kind, was in fact entered. Accordingly, defendant was not placed on trial. As stated in *Monaghan*, "a plea is necessary before there can be a trial. Until there is an issue there is nothing to try." (P. 231 of 102 Cal.; to the same effect see *People* v. *Corbett, supra*, 28 Cal. 328, 330-331; *People* v. *Gaines, supra*, 52 Cal. 479, 481.) We accordingly conclude that since the first proceeding proceeded on the theory that a guilty plea had been entered by defendant, when in fact no plea had been entered, there was in effect no trial and nothing to which jeopardy could attach.

It should be noted here that the trial court did not find on the plea of former judgment. Although on this appeal defendant has not claimed that such failure constitutes error, we deem it expedient to discuss the effect of such omission. It is apparent from defendant's brief and from the record in the court below that defendant used the term "jeopardy" in its broader and more general sense as embracing also the claim of former conviction or acquittal on a trial for the same offense. (See 14 Cal.Jur.2d, Criminal Law, § 173, p. 415.) The claim made by defendant in the trial court and on this appeal is that he was placed in jeopardy both by the purported plea of guilty and the judgment of conviction in the first proceeding. Suffice it to say, in the instant case the circumstances supportive of both pleas, and the legal principles applicable thereto, are identical.

Where, as here, there is no dispute as to the facts, whether defendant was formerly convicted or was formerly once in jeopardy is a question of law and not of fact. (*People* v. *Blue*, 161 Cal.App.2d 1, 8 [326 P.2d 183]; *People* v. *Brain*, 75 Cal.App. 109, 110-111 [241 P. 913].) Accordingly, in the light of the conclusion hereinbefore reached that there was no valid judgment of conviction in the first proceeding as a matter of law, a specific finding that there was no former conviction would have been a mere formality, particularly in view of the trial court's finding that defendant was "not in jeopardy." The failure to make such a special finding could not possibly have prejudiced defendant. In *People* v. *Gelardi*, 77 Cal.App.2d 467 [175 P.2d 855], it was held that the failure to make a separate finding on the jeopardy plea in a nonjury case did not require a reversal since such failure did not prejudice the defendant. (See also *People* v. *Frank*, 75 Cal.App. 74, 81-82 [241 P. 924]; *People* v. *Grace*, 88 Cal.App. 222, 232 [263 P. 306].)

We also note that when the opportunity was presented for defendant to state whatever grounds he had why judgment should not be pronounced upon him at the arraignment for judgment, one of which might have been that the case had not been completely tried because the court had not found on the issue of former conviction, no such ground was urged. The failure to make the subject finding could then have been readily corrected, but it was not called to the court's attention. This is an added reason why there should not be a reversal because of the failure to make this special finding.

### The Applicability of Dorado

The evidence which was introduced on behalf of the prosecution on the issue of defendant's guilt consisted of the following: Several documents indicating that defendant had been committed to the Soledad Facility; a facility record indicating that defendant had escaped from the facility; and testimony of three prison officials to the effect that defendant was found to be missing from Soledad on December 1, 1963. The third of these officers, Lawrence Smith, was questioned on direct examination concerning a conversation he had had with defendant regarding the alleged escape. We set out the subject questions and the answers thereto in the footnote.[7]

Following the decision of the United States Supreme Court in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], it was held in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], that it was error for a trial court to admit into evidence the confession of an accused when it was elicited under the following circumstances: (1) The investigation was no longer a general inquiry into an unsolved crime but had begun to focus on the defendant; (2) the defendant was in custody; (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements; and (4) the authorities

---

[7]"BY MR. CHANG: Q. Mr. Smith, did you have a conversation with Mr. Sturdy? A. Just a casual conversation on the way up. Q. Today? A. Over in the tank—that's right. Q. Was that conversation with regards to an alleged escape that Mr. Sturdy is charged with? A. It was. Q. And did you offer him any threats or promises of immunities? A. I did not. Q. Were the statements he gave you given to you— A. (Interrupting) Voluntarily. Q. (Continuing)—freely and voluntarily? MR. EPSTEIN: Objection, conclusion of the witness. THE COURT: Overruled. BY MR. CHANG: Q. Can you relate what Mr. Sturdy said with regard to this escape, if anything? A. I just asked him what the case was. He said escape and I asked him where he went to, what he did after he left the camp. He said he went to Los Angeles, and that's all I know. MR. CHANG: I have no further questions."

had not effectively informed the defendant of his right to counsel or of his absolute right to remain silent, and no evidence established that he waived those rights. In the present case there is no question that requirements (1) and (2) of the *Dorado* principle were fulfilled. Insofar as requirement (4) is concerned the record does not disclose that defendant was informed of his right to counsel and of his right to remain silent, or, if he was so advised, that he knowingly and intelligently waived those rights. ▇▇ In the face of a silent record a reviewing court cannot presume that the police informed a defendant of these rights or that he waived such rights. (*People* v. *Stewart,* 62 Cal.2d 571, 581 [43 Cal. Rptr. 201, 400 P.2d 97].) Accordingly, we must conclude that requirement (4) has been fulfilled.

▇▇ With respect to requirement (3), we are of the opinion that the total situation which developed in the present case does not fulfill this requirement. Analyzing the total situation in the light of the test described by *Stewart,* that is, considering "such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all the other relevant circumstances" (p. 579), we are satisfied that Officer Smith was not carrying out a process of interrogations that lent itself to eliciting incriminating statements. The subject conversation was brief and occurred on the same day of the trial, apparently while Smith was taking defendant to court. The fact that this conversation occurred at such a late date and was carried on with apparent friendliness and casualness, coupled with the fact that Smith did not know the nature of the charge against defendant when he "asked him what the case was," militates against the conclusion that Smith was engaged in the requisite "process of interrogations."

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.